## C. B. ADAMS ET AL. v. L. C. FISHER ET AL.

### No. 2367.

1. **Stare Decisis—Judgment.**—The conclusions announced by the Supreme Court on a former appeal of questions involved, properly arising on the record and necessary to be determined, must be deemed a final adjudication of such questions, though the reversal of the judgment may have been made on another question.

2. **Case Adhered to.**—The decision on the former appeal in this case (63 Texas, 651) regarding notice of assessments for street improvements adhered to.

3. **Street Improvements.**—It seems that after a street in Galveston had been improved in 1872 by grading, filling, and shelling, and a part of the cost thereof assessed against and paid by the owners of abutting lots, the city had power in 1883, after further improvement was made necessary to fit it for the uses for which the street was needed, to cause the same street to be improved by grading, filling, and paving, and to impose a part of the cost thereof on the property owner in front of whose property the improvement was made. The power to improve implies the power to repair.

4. **Municipal Power.**—The power vested in a city to make local improvements at the expense of the property to be benefited is a continuing one, unless there be something in the law granting the power to indicate a different intention.

5. **City Charter.**—The city council of Galveston is by the charter of the city invested with the power to determine whether the purpose for which a local assessment is made for the improvement of a street is public in its character, and whether the improvement will be beneficial to the owners of adjacent property. Its determination of these questions is conclusive.

Appeal from Galveston.    Tried below before Hon. W. H. Stewart.
The opinion states the case.

*Trezevant & Franklin,* for appellants. — 1. The enforcement of a local assessment without giving the owner of the property to be charged a hearing or an opportunity to be heard at some stage of the proceedings, is a taking of property without due process of law.

2.    The right to a hearing or to an opportunity to be heard at some stage of the proceedings for the enforcement of a local assessment is recognized throughout the United States as being part of the due process of the law of the land, and this right is recognized as especially indispensable where, as in the case at bar, the charter, without providing for competitive contracts, authorizes the city to make the improvement and to fix the cost, ex parte, through its officers and employes.    Const., art. 1, sec. 19; Cool. on Tax., 265–68; Stuart v. Palmer, 74 N. Y., 183; City of Lowell v. Wentworth, 6 Cush., 221; Gatch v. Des Moines, 18 N. W. Rep., 310; Brown v. Denver, 3 Pac. Rep., 455; Railroad Tax Cases, 13 Fed. Rep., 762; Dool v. Cassopolis, 42 Mich., 547; Butler v. Saginaw, 26 Mich, 164; Land Co. v. Buffalo, 7 Neb., 257; Overing v. Foote, 35 N. Y., 263; Gilmore v. Sapp., 100 Ill., 297; Davidson v. New Orleans, 96 U. S., 97; Hagar v. Rec. Dist., 111 U. S., 709; Galveston v. Heard, 54 Texas, 420.

Section 21, article 12, Constitution of 1869, prohibited the sale of land for taxes except upon a decree of some court having jurisdiction.    The right to a hearing is also enforced in cases arising under the police power. Miller v. Burch, 32 Texas, 209; Joyce v. Woods, 9 Rep., 645; Hutton v. Camden, 39 N. J. L., 122; Underwood v. Green, 42 N. Y., 148; Yates v. Milwaukee, 10 Wall., 497; 42 Miss., 393; 5 Ill., 286; 2 Pa. St., 366.

3.    The charge under the charter of one-third of the cost of improving a street against each abutting lot, without regard to the cost of the entire improvement or to the amounts charged against other lots abutting on the improvement, is an arbitrary and illegal exaction under the guise of taxation, without the essential element of apportionment, and in violation of the Constitution of this State.

4.    Street assessments are imposed under the taxing power, and not under the police power, of the government, and the distinction is one of substance, not of form.    Taxation without apportionment is confiscation. Const., art. 1, sec. 19; Const., art. 8, par. 1, sec. 1; Charter Rev. Ord., sec. 128, p. 61; Cool. on Tax., pp. 447–54, and notes p. 454, Id., 460, 461; Cool. on Const. Lim., *508, and notes; Cool. on Tax., 2 ed., 660–62; State v. Commissioners, 38 N. J. L., 190; State v. Elizabeth, 37 N. J. L., 330; Oil Co. v. Palmer, 20 Minn., 468; Thomas v. Gain, 35 Mich., 155; Cool. on Tax., *175 (note 1), *495, *501; Burr. on Tax., 466, 469, 494; 2 Dill. on Mun. Corp., sec. 761, pars. 3, 4; Desty on Tax., 28, 30; Woodbridge v. Detroit, 8 Mich., 298; Matz v. Detroit, 18 Mich., 522; People v. Lynch,

51 Cal., 15; Macon v. Patty, 57 Miss., 378; Larned v. Chicago, 34 Ill., 203; St. John v. East St. Louis, 50 Ill., 92; Ageus v. Mayor, 37 N. J. L., 415; St. Louis v. Clemens, 49 Mo., 552; Neenan v. Smith, 50 Mo., 525; Washington Ave. Case, 69 Pa. St., 353; Lexington v. McQuillan's Heirs, 9 Dana, 513; Chamberlain v. Cleveland, 34 Ohio St., 551; Daily v. Swazie, 47 Miss., 386, 387.

5.   The special benefits, which are the basis of all local assessments, accrue to the abutting lots whenever a street is improved, and the Legislature has no power to authorize the levy of a second assessment upon the same property for a second improvement of the same street.   The charter of the city of Galveston does not, in terms or by implication, authorize a second assessment of the same property for a second improvement of the same street.   Charter Rev. Ord., p. 61; Prot. Orph. Asylum's Appeal, 1 Cent. Rep., 903; Wistar v. Philadelphia, 80 Pa. St., 505; Hammett v. Philadelphia, 65 Pa. St., 146; Watterson v. Bradley, 1 West. Rep., 499.

6.   Where, as in the case at bar, an assessment is shown to have been made alone for the public interest, and without regard or reference to any special benefits to the abutting property, such an assessment is an arbitrary taking of property, and the allegations of plaintiffs' petition are sufficient in law to entitle them to the relief prayed for.   Cool. on Tax., 104, and notes 488, 489; Burr. on Tax., secs. 29, 33, 146, pp. 464–68; 1 Desty on Tax., pp. 26 (sec. 9), 281 ( sec. 59), 285; People v. Lynch, 51 Cal., 15; Prot. Orphan Asylum, 1 Cent. Rep., 903; Saw Mill Run Bridge, 85 Pa. St., 163; Hammett v. Philadelphia, 65 Pa. St., 146; Louisville v. Rolling Mill Co., 3 Bush, 416; Guest v. Brooklyn, 66 N. Y., 506; Gage v. Graham, 57 Ill., 144; Ryrson v. Mtey, 16 Mich., 269.

*F. Charles Hume,* for appellees.—It is respectfully submitted on behalf of the appellees that the issues now urged are controlled and disposed of adversely to appellants' contention by the action of this court upon the former appeal.   Adams v. Fisher, 63 Texas, 651; Taylor v. Boyd, Id., 533; Texas Trans. Co. v. Boyd, 70 Texas, 237.

STAYTON, CHIEF JUSTICE.—This cause was before this court at a former term, and is reported in 63 Texas, 651.

The judgment of the District Court was then reversed and the cause remanded on the ground that it appeared from the petition, to which a demurrer was sustained, that the levy on property, the sale of which it is the purpose of this suit to enjoin, was made before the expiration of the time given by the charter and ordinances of the city for the owners of property to make voluntary payment.

After the cause reached the lower court the petition was amended,

and that part on which the reversal was had was abandoned.   The main questions considered on the former appeal were:

1.   Whether so much of the charter of the city of Galveston as authorized it to improve its streets and impose on the owners of lots abutting on a street so improved one-third of the cost of so much of the improvement as was in front of a particular lot, and to give a lien on such lot, was constitutional.

2.   Whether assessments for local improvements could be legally made under a law which did not provide for actual notice to the property owner, and give an opportunity for a hearing as to the propriety and legality of the contemplated work and assessment, before the one was done or the other made.

After a full consideration of these questions it was held, following former decisions of this court, that the provisions of the charter called in question were not in violation of the Constitution.

After this a motion for rehearing was filed, and in support of it an elaborate argument was filed presenting the same views, and many of the same authorities were relied upon.

That motion, after full consideration, was overruled, and it is now insisted that these questions are still open for discussion "since their determination in the former appeal was not required for the disposal of the case."

These were the questions vital to the appellants' case—the questions which they presented, argued, asked, and were entitled to have decided.

They were decided adversely to the appellants, and the fact that a reversal was made on another question presented by them does not render the adjudication of the questions which were involved in the case and necessary to be determined, and actually determined, any less binding upon the parties than would it be had there not been another question involved not going to the substantial merits of the case but such as, decided in their favor, required a reversal of the judgment.

To decide the case it was necessary to decide the vital questions involved; but to reverse the judgment it was only necessary to decide in favor of the appellants a question not vital to the ultimate rights of the parties.

On the former appeal it was, in effect, held that the facts alleged in reference to the action taken by the municipal authorities in directing the work to be done and in making assessments were constructive notice to residents and property owners of such facts as it was deemed necessary by the Legislature to give notice of.

We see no reason which would justify our holding that the former decision of these questions was erroneous, and if in any case this court on a second appeal would be authorized to reverse its former decision of the same question in the same case, this case does not call for such action.

The questions referred to must be deemed settled by the former decision.

The improvements, for the one-third cost of which the appellants and their property are sought to be made liable, were made in 1883, and the petition alleges that in the year 1872 the same street was improved by grading, filling, and shelling, and a part of the cost of this paid by property owners, but that thereafter the city failed to keep it in order, whereby it became unfit for uses to which such a highway is ordinarily applied.

On this ground it is claimed that the city had no power to improve the street a second time and in a different manner, and to impose a part of the cost of the second improvement on the property or its owners.

It is not denied that the improvements made on the street were necessary; on the contrary, it is in effect admitted that the street required improvement to fit it for some of the uses to which streets are most commonly applied.

The improvement made was by grading, filling, and paving the street, which had formerly been improved by grading, filling, and shelling.

If after, in the exercise of the best judgment of the city authorities, a street had been improved in a given manner, it was found that other and different improvements were necessary, we are not prepared to hold that the city had not the power to cause the same to be made, and to impose a part of the cost thereof on the property or property owners in front of whose property the improvement was made.

As said in Wistar v. Philadelphia, 80 Pennsylvania State, 511, "The power to pave implies a power to repair and repave when the condition of the cartway or footway requires it, and of this prima facie the city officers may judge."

"Not only the power to tax, but the power to make local improvements at the expense of the property benefited, is, like all other legislative power of the municipality, *a continuing one,* unless there be something to indicate the contrary, and hence it is not exhausted by being once exercised. Therefore, the power to compel property owners to pave ordinarily extends to compelling them to *repave* when required by the municipal authorities." Dill. on Mun. Corp., 780.

This rule has been enforced in many cases in which repavement was made. Williams v. Detroit, 2 Mich., 581; McCormack v. Patchin, 53 Mo., 33; Municipality v. Donon, 10 La. Ann., 57; Gurnce v. Chicago, 40 Ill., 170; City of Lafayette v. Fowler, 34 Ind., 140; Sheley v. Detroit, 45 Mich., 434.

The charter of the city of Galveston declares that "the city council shall be invested with full power and authority to grade, shell, repair, pave, or otherwise improve any avenue, street, alley, or any portion thereof, within the limits of said city, whenever, by a vote of two-thirds of the aldermen elected, they may deem such improvement necessary for the

public interest;" and it therein provides that one-third of the costs of such improvements shall be paid by the owners of the property fronting on the street, alley, or avenue.    Charter, sec. 127.

The case of Hammett v. Philadelphia, 65 Pennsylvania State, 164, does go to the extent of holding that when a street was once improved at the expense of the owners holding property thereon, and was still in good order and well adapted to the advantage and comfort of those who lived upon it, and for ordinary business and travel, as were other streets of the city, that the city had not the power to cause it to be so improved at the cost of the property owners as to make it "a great public drive, a pleasure ground, along which elegant equipages may disport of an afternoon," even though its ordinary use may thereby be bettered.

That case, however, has been criticised, and we can not regard it as having application to the case before us.

The petition, as amended, further alleged that Mechanic Street, on which the improvement was made, extended from east to west, and that from Nineteenth to Twenty-fifth Streets, extending north and south, the city was populous and property of sufficient value to justify extensive street improvements, but that west of Twenty-fifth Street the property on Mechanic Street was used chiefly for workshops, lumber and coal yards, storage sheds, and small dwelling houses, besides cotton yards and presses and railroad freight depots abutting on the street at the western extremity of the improvement made.

It further alleged that Mechanic Street was improved from Twenty-first to Thirty-third Street, and that prior to the improvement complained of none of the streets running east and west had been so improved further west than Twenty-fifth Street, and that the chief use made of the improved street and the purpose for which it was improved was to make a roadway for the transportation of cotton, sugar, molasses, and other heavy merchandise to and from the railroad depots and cotton presses at the western extremity of the improved part of the street to and from the populous and business portion of the city at the eastern end thereof.

It also denies that the property of the appellants was benefited or enhanced in value by reason of the improvement.

To justify or authorize a local assessment the purpose for which it is made must be public in its character, and presumably beneficial to the property on which the burden is to be placed, and whether so beneficial or not must be determined by the legislative power authorizing the assessment; and no inquiry as to this can be made by the courts when the purpose is one for which such an assessment may be lawfully made.

The charter of the city of Galveston gives to its council the legislative power to determine whether such an improvement will be for the public interest, and also to determine whether it will be of such benefit to property fronting on that part of the street to be improved as will justify the

imposition of a part of the cost of the improvement on the owners of such property, and its determination of this question must be deemed conclusive.

As said in City of Ludlow v. Railway, 78 Kentucky, 360: " While assessments of this character, as distinguished from general taxation, rest upon the basis of benefits or presumable benefits to the property assessed, it is not essential to their validity that actual enhancement in value or other benefit to the owner be shown. The passage of the ordinance by the city council, under the power granted in the charter, is conclusive of the propriety of the improvement and of the question of benefit to the owners of abutting property. Northern Indiana Railway v. Connelly, 10 Ohio State, 164. Absolute equality in the distribution of such burdens can not be attained; an approximation to equality is all that is possible, but in reaching this point the present or prospective use of the property can not enter into the calculation." McFerran v. Alloway, 14 Bush, 582; Cooley on Taxation, 459.

We find no error in the judgment and it will be affirmed.

*Affirmed.*

Delivered January 10, 1888.

This case reached the Reporter January, 1890.